G. H. PEAVY ET AL. *v.* C. H. WOOD.

1. TAX-TITLE. *Redemption. Ministerial acts. Compliance with law.*

There is no such thing as an equitable redemption of land sold for taxes. To be valid, redemption must be according to the terms of the statute. As to this, officers are agents of the state, and their acts not in conformity to the statute are void, and will not affect the tax-title.

2. SAME. *Laws 1876, p. 129; non-compliance with. No redemption.*

Under the act of 1876 (Laws, p. 129), providing that one desiring to redeem land sold for taxes should obtain from the chancery clerk a certificate showing the amount due, and pay the same to the sheriff, who. was to give a receipt therefor, and pay the county taxes to the treasurer, taking his receipt, and transmitting the same to the auditor, who was required to execute a conveyance, charging to the sheriff the other taxes, which were to be paid into the state treasury, where the certificate of the clerk was not obtained, but the money was paid to the sheriff, who receipted for it, paying the county taxes to the treasurer and sending the balance, certified by the chancery clerk to be correct, to the auditor, no conveyance, however, being executed by that officer, there was no redemption, and a subsequent purchaser from the state acquired the title.

FROM the chancery court of Jackson county.

HON. W. T. HOUSTON, Chancellor.

Bill by appellee against appellants to cancel a tax-title. Complainant claims to have the original title. That is, he claims under conveyances' reaching back to the United States. As stated in the opinion, he avers in his bill that the land was sold to the state for taxes March 1, 1875, and claims that the owner, from whom he purchased, redeemed the same after the passage of the act of April 15, 1876 (Laws, p. 129). Section 48 of that act provided that one desiring to enter or redeem land sold for taxes should procure from the chancery clerk a certificate containing an itemized statement of the taxes due, and pay the amount to the sheriff, who should execute duplicate receipts, one to be delivered to the redemptioner; the other the sheriff was required to present to the county treasurer, paying him the county taxes, and the treasurer was to indorse thereon his receipt for the same. The sheriff was then required to transmit this receipt to the auditor, who was to execute to the redemptioner a conveyance for the land described, and return the same to the sheriff for delivery. The auditor was also required to charge the sheriff with the state taxes, which were to be paid into the state treasury.

In December, 1876, the former owner of the land, one Lee, under whom complainant claims, seeking a redemption under the act of 1876, but without obtaining from the chancery clerk a certificate of the amount of taxes due, paid to the sheriff of the county $265.16, which was assumed to be the correct amount due for the redemption of the land, and took from him a redemption receipt in the form prescribed by the auditor for such cases. The sheriff testifies that the original of this receipt and the sum due for state taxes, certified by the chancery clerk to be correct, were sent by him to the auditor, in December, 1876; that the auditor notified him the amount was insufficient, whereupon, on February 6, 1877, he collected from the owner the further sum of $19.91, giving him a receipt for the same, specifying therein that it was in full of charges for the redemption of the land. These

receipts were introduced in evidence. The sheriff testified that the state taxes, in full, were by him remitted to the auditor, and that he paid the county taxes to the treasurer of the county. He also testified that all the taxes and charges required to redeem the land, according to the certificate of the clerk, were paid to him; but, as stated above, the certificate of the chancery clerk, required by the act of 1876, was not obtained, or it does not seem to have been obtained.

There was testimony tending to show that the money alleged to have been sent to the auditor was never received by him. At any rate, he executed no conveyance in pursuance of the alleged redemption, and the land remained on the records in his office as belonging to the state, under the sale for taxes, until May 4, 1882, when the same were purchased by one Belch, who conveyed to one Carlisle, and he conveyed to defendants.

The defendants answered the bill, denying the material allegations thereof, and asserting that complainant had no title. A great many questions were raised in reference to which it is not necessary to make any statement. Among other things, defendants denied that there had ever been a redemption of the land.

On the hearing, the above facts were shown, substantially, and a decree was entered in favor of complainant, confirming his title to a part of the land claimed, from which decree the defendants appealed, and complainant prosecuted a cross-appeal. It is, however, unnecessary to make any statement in reference to the cross-appeal.

*Nugent & McWillie*, for appellants.

It was incumbent on complainant to show a good title. 67 Miss., 413, 719; 68 *Ib.*, 161, 250.

The land was sold to the state in 1875, and it held the title until the purchase by Belch in 1882. The alleged redemption, under the act of 1876, amounted to nothing, because the plain requirements of that act were not complied with.

The owner was required to obtain from the chancery clerk a certificate, showing in detail the amount of taxes and charges due. This was never done. Nor was there ever any payment of the state taxes into the state treasury. The auditor had no authority to receive the money, and did not, in fact, receive it. The land remained on the auditor's books, and the sheriff received credit for the state taxes on it until it was purchased in 1882.

The scheme for redemption provided by the act of 1876 was a precise one, and failure to comply with its terms left the title in the state. Here the owner himself was in default, therefore he cannot claim that in equity the redemption should be treated as complete.

The right of redemption is created by the statute, and its terms must be observed. Cooley on Taxation, p. 364; Black on Tax-titles, §§ 183–185; 63 Miss., 592.

One cannot complain if he trusts to inattentive agents. *Edmondson* v. *Ingram,* 68 Miss., 32.

*C. H. Wood, pro se.*

We submit that the owner did every thing required of him in order to effect the redemption, and that the land was redeemed from the tax-sale. He paid to the proper officer the full amount required, and this was all he was called upon to do. If the correct amount was paid, it is wholly immaterial that a certificate showing the amount due was not obtained beforehand. A tender of the amount due for taxes, made before the time for redemption expires, destroys the tax-title. *Price* v. *Ferguson,* 66 Miss., 404; Cooley on Taxation, p. 368.

The right to redeem is not a matter of grace, but a condition attached to the tax-sale. *Moody* v. *Hoskins,* 64 Miss., 468; *Faler* v. *McRae,* 56 *Ib.,* 227; Cooley on Taxation, p. 368, § 9.

Tender is equivalent to a redemption, whether the amount is received or not. 2 Desty on Taxation, p. 886; 3 W. Va., 522; 5 La. Ann., 675.

Payment is to be made to the officer designated to receive the money. Burroughs on Tax-titles, p. 359.

If the owner does all the law requires of him, the sale is discharged, though the officer makes a mistake. Cooley on Taxation, p. 367, § 6.

*Calhoon & Green,* on the same side.

The redemptioner paid all taxes, costs, etc. The fact that a certificate of the chancery clerk as to the amount due is not shown is immaterial. The object of this certificate was simply to *ascertain the sum due.* If such sum was in fact paid, it is of no moment whether the certificate was procured or not.

Argued orally by *W. L. Nugent,* for appellant.

Campbell, C. J., delivered the opinion of the court.

There is nothing in the record to support a claim by either party, based on any statute of limitations or lapse of time, as provided for by § 1709 of the code of 1871; and the only question is as to title conferred by the several grants mentioned in the pleadings, and who has it as between the parties to this suit.

In view of the allegation of the bill that the lands were all sold for taxes in 1875, and struck off to the state as purchaser, and that the sheriff and tax-collector made and certified a list of said lands as sold to the state, which list is in the record, and conforms to law, whereby the title of the lands was vested in the state, the only question to be decided is whether the allegation of the bill that the lands were redeemed, and the title of the state acquired by said sale and list was extinguished. If so, the title claimed by the complainant becomes a matter for consideration. If not, the title of the complainant fails, in any view of the sufficiency of the evidence to maintain his deraignment through successive conveyances set forth and relied on by him. As the

bill avers the sale to the state for taxes on March 1, 1875, and claims a redemption of the lands from the state, the validity of its title, by virtue of that sale, is not open to controversy; but, in view of the argument of counsel on both sides as to this, we remark that if the state's title depended on the certification of the list of lands sold to the state, and made and certified by the collector to the clerk, and by the clerk to the auditor, there is no valid objection to the list here involved, for the act of December 22, 1874 (Laws special session, p. 14), required the list of all lands sold for taxes to be returned by the tax-collector to the circuit clerk, who, under then existing laws, was the officer charged with the disposal of lands after they were sold for taxes. He was the proper person to certify the list to the auditor, if it was to be so certified. The first Monday of March, 1875, was the proper time for a sale for taxes, as we assume, under act of January 26, 1875 (Laws, p. 124), and the list made by the tax-collector, and certified under his hand to be correct, and returned to the circuit clerk, showing the lands struck off to the state, must be held to have vested title in the state, and, if that title was not afterwards extinguished by redemption, as claimed by the bill, complainant has no case.

There is a good deal to suggest the improbability of what is claimed to have been done looking to the alleged redemption of the land, but, accepting as true all that is testified to on this subject, it must be held to fall far short of a redemption. There is no such thing as an equitable redemption of land sold for taxes. It could occur only according to law. The act of 1876, §§ 48, 49, p. 129 of the laws, prescribed the terms on which the state's title could be acquired. The officers whose acts were to effect redemption were agents of the state only to execute the law, and could not bind the state except in conformity to law. And, if it be true, as Clark thinks, that he, as sheriff, sent the money to redeem the land to the auditor, that did not redeem it. The auditor had no authority to receive the money, and if he did receive it, that

did not bind the state. The law mentioned contains specific provisions for extinguishing the state's title, and only by conformity to them could the title of the state be acquired. The law is not shown to have been complied with, and the title, vested in the state by the sale for taxes, and the list returned by the collector, was in the state until it parted with it to him under whom defendants claim.

*Reversed and bill dismissed.*

Judge Woods, being disqualified, took no part in this decision.